## GEORGE W. REED v. JOHN FRANCIS.

1. SECTIONS 89 AND 104, CH. 166, LAWS OF 1879, *Valid*. Sections 89 and 104 of the act of 1879 relating to the state departments and officers, (Laws of 1879, pp. 312 and 317,) which sections create an "executive council," and authorize them to designate some newspaper printed and published at Topeka as the "official state paper," are not unconstitutional or void. Said sections are not in contravention of § 4, article 15, of the constitution, which provides that "all public printing shall be done by a state printer," and "all public printing shall be done at the capital;" nor are they in contravention of any other section of the constitution.

2. PUBLICATION OF SYLLABI OF DECISIONS OF SUPREME COURT; *Contract Construed; Mandamus Refused*. George W. Martin was, during the year 1878, and still is, the state printer for the state of Kansas, and as such state printer did, in pursuance of § 5 of the act of 1876, relating to the state printer, (Laws of 1876, p. 308,) designate the *Topeka Blade*, a

newspaper published at Topeka, Kansas, as the "official state paper" for the state of Kansas, for the period of one year next after July 1, 1878. George W. Reed, who was the editor, publisher and proprietor of said newspaper, accepted said designation, published the official syllabi of the decisions of the supreme court of Kansas in said newspaper, and received the pay therefor up to April 1, 1879, after which time the state treasurer refused to pay him for publishing any more of such syllabi in said newspaper, on the following grounds, to wit: Prior to said April 1, 1879, said § 5 was repealed by § 133 of the act of 1879, relating to the state departments and officers. (Laws of 1879, p. 324, § 133; see also, Laws of 1876, p. 315, § 16.) An "executive council" was created by § 89 of the same act (Laws of 1879, p. 312, § 89); and the power to designate the "official state paper" was taken from the state printer and placed in the hands of said council (id. p. 317, § 104), and in pursuance of this statute said council designated the *Commonwealth*, another newspaper published at Topeka, as the "official state paper" for the state of Kansas for the period of one year next after April 1, 1879, and the proprietors of said *Commonwealth* accepted such designation, and commenced the publication of said syllabi. *Held*, That the grounds of the state treasurer for refusing to pay the proprietor of the *Blade* for publishing syllabi in the *Blade* after April 1, 1879, are sufficient, and therefore a peremptory writ of mandamus will not be issued to compel the state treasurer to make such payment. The "designation" of the *Blade* by the state printer as the "official state paper" for the period of one year, and the acceptance thereof by the proprietor of the *Blade*, did not, under the statutes of Kansas, constitute such a contract that the legislature could not afterward annul it, or provide for its being annulled before the expiration of the year.

### *Original Proceedings in Mandamus.*

ACTION brought in this court by *George W. Reed* against *John Francis*, treasurer of state, to compel the defendant, as such officer, to pay a certain bill of plaintiff for printing the official syllabi of the decisions of the supreme court of Kansas. The facts are sufficiently stated in the opinion.

*L. H. Whitney*, for plaintiff.

*W. C. Webb*, and *Willard Davis*, attorney general, for defendant.

The opinion of the court was delivered by

VALENTINE, J.: This is an original proceeding in mandamus, instituted by the plaintiff for the purpose of com-

pelling the defendant, as state treasurer, to pay a certain bill of the plaintiff for printing the official syllabi of the decisions of the supreme court of Kansas. The main question presented, or sought to be presented, is whether the legislature has the power to authorize the publication of said syllabi (or, indeed, of anything else) in any newspaper other than the one designated by the state printer. The defendant waives all objections to the manner of presenting this question, and merely asks that we shall inform him as to what his duties are in the premises. The facts in the case are substantially as follows: George W. Martin was, during the year 1878, and still is, the state printer for the state of Kansas, and as such state printer did, in pursuance of § 5 of the act of 1876 relating to the state printer, (Laws of 1876, p. 308,) designate the *Topeka Blade*, a newspaper published at Topeka, Kansas, as the "official state paper" for the state of Kansas for the period of one year next after July 1, 1878. George W. Reed, who was the editor, publisher and proprietor of said newspaper, accepted said designation, published said syllabi in said newspaper, and received the pay therefor, up to April 1, 1879, after which time the state treasurer refused to pay him for publishing any more of such syllabi in said paper, on the following grounds: Prior to said April 1, 1879, said § 5 was repealed by § 133 of the act of the legislature of 1879, relating to the state departments and officers. (Laws of 1879, p. 324, § 133; see also, Laws of 1876, p. 315, § 16.) An "executive council" was created by § 89 of the same act, (Laws of 1879, p. 312, § 89,) and the power to designate the "official state paper" was taken from the state printer, and placed in the hands of this council, (id., p. 317, § 104,) and in pursuance of this statute, said council designated the *Commonwealth*, another newspaper published at Topeka, as the "official state paper" for the state of Kansas for the period of one year next after April 1, 1879, and the proprietors of said *Commonwealth* accepted such designation, and commenced the publication of said syllabi.

The plaintiff in this action claims that the grounds of the

defendant for refusing to pay him are not sufficient, and claims that the statute creating the executive council, and authorizing them to designate the official state paper, is unconstitutional, and void, being, as he claims, in contravention of § 4, article 15 of the constitution of the state of Kansas (Comp. Laws of 1879, p. 67), as well as in contravention of other sections of the constitution. This section of the constitution provides that "all public printing shall be done by a state printer," and "all public printing shall be done at the capital." The plaintiff claims that the publishing of said syllabi in a newspaper is "public printing" within the meaning of said constitutional provision, and therefore that it must be done, if done at all, by the *state printer*, and at the capital. Just how it is *public printing* he has not very definitely informed us. It would seem that printing done by a private person, in a private newspaper, to be sent to private subscribers, would be private printing. In the present case the editor, publisher and proprietor of the newspaper in which it is claimed the syllabi should be published, is a private person; the paper, ink, type, printing presses, etc., used by him, are his private property; and the newspaper, when printed, is his own private property, and he sends it to his private subscribers. No public officer has anything to do with the printing or publishing of the newspaper; the state does not own anything connected therewith; and the state does not even subscribe for any of the copies of the newspaper when published.

The printing, as printing, is in such a case most certainly a private affair. Neither the state as a corporation, nor the public as composed of individual citizens, has anything to do with the paper until after it is all *printed* and sent to subscribers; and even then the state, as a corporation, has nothing to do with the paper, except to pay for the publication of the syllabi therein. The state does not at any time own the *printing*, or even any of the newspapers on which the printing is done. It has no right to authorize the *state printer*, or any other public officer or person, to do the printing

33 — 22 KAS.

in such newspaper; and it cannot even authorize the state printer, or any other public officer or person, to even visit the printing office, except with the permission or consent of the proprietors thereof. Then how can such printing be said to be *public* printing? It can no more be said to be public printing than the advertisements of John Smith and Thomas Jones, inserted in the same newspaper, can be said to be the printing of such individual persons. It is the *publication* of the syllabi that is public, while the printing thereof, *as printing*, is private. But even the publication is only indirectly and remotely public. It is done merely for the benefit of the individual citizens of the state, and not for the benefit of the state or the public as a corporate entity.

No department of the state government has ever given to the words "public printing" the construction contended for by the plaintiff in this case. On the contrary, every legislature has provided for the publication of the public matters in newspapers other than the one designated by the state printer, and in newspapers published elsewhere than at the state capital. This has been uniformly so with respect to the publication of statutes ordered to take effect upon their being published in some newspaper. Stray notices have been uniformly published in the *Kansas Farmer*, a newspaper now published at Topeka, but formerly published at Leavenworth city; and delinquent tax lists (including *state taxes*, as well as county, city and other *public taxes*) have been published in each organized county of the state ever since said constitutional provision was adopted. But turning to said § 5 of the act of 1876, relating to state printer, under which section the plaintiff founds his whole claim, and with his construction the section is itself unconstitutional. It provides for the publication of public proclamations, orders, notices and advertisements in newspapers published elsewhere than at the capital of the state. We do not think that all printing authorized by the state or paid for by the state is necessarily public printing, and it never has been so considered. We suppose that the state might purchase books published else-

where than at the capital, and by some person other than the state printer, although they in fact contain *printing*. We suppose that the state might even subscribe for books, or newspapers, or periodicals, to be published in the future elsewhere than at the capital, and by some person other than the state printer, although they are to contain printing, and the printing to be done in the future. Such subscriptions at least have always been made for the state, and we suppose always will be. With the plaintiff's construction, however, of the constitution, such a thing could not be done. If the state should desire to sell bonds or other property in the great market of New York, we suppose it might advertise the same in the great dailies published there, and would not be compelled to come back to Kansas and advertise the same in some Topeka newspaper designated by the state printer. Or if the state should wish to encourage emigration from Europe to Kansas, it might publish notices in the newspapers of the great cities of Europe, and would not be confined in its publication to the limits of Topeka and to the newspaper designated by the state printer. Said § 4, art. 15 of the constitution is the last expression of the will of the people upon the subject of which it treats, and therefore everything adopted prior to the time of its adoption and in conflict therewith, must be considered as repealed by it. Yet, although it requires that "all public printing shall be done by a state printer," and "all public printing shall be done at the capital," still nearly all the newspapers in the state of Kansas have heretofore published, and we suppose will continue to publish, the various proposed constitutional amendments in their own columns and receive pay therefor from the state. If the plaintiff is correct, no paper in the state but the one published at the capital and designated by the state printer should publish them.

We do not wish to be understood as saying that the publication of syllabi in a private newspaper is in no sense public printing. The *publication* is in one sense public, and therefore the necessary incidental *printing* may also in one sense be

said to be public.   But it can be said to be public only in a very remote and attenuated sense, and not at all in the closer and stricter sense contemplated by the constitution.   So far as the constitution is concerned, the *printing* as distinguished from the publication is purely and strictly private printing. The printing is one step back and behind the publication, the same as the types and printing presses, etc., are one step back and behind the printing.   But even the publication, as we have already stated, is not directly and proximately public, but only indirectly and remotely so.

We do not think that the "designation" of the *Blade* by the state printer as the "official state paper" for the period of one year, and the acceptance thereof by the proprietor of the *Blade*, constituted under our statutes such a contract that the legislature could not afterward annul it or provide for its being annulled before the expiration of the year. (Laws of 1876, p. 308, § 5, and p. 315, § 16; Laws of 1879, p. 324, § 133, and p. 317, § 104.)

We do not think that it is necessary to discuss any of the other points made by the plaintiff.   They are all overruled, however.

The peremptory writ of mandamus prayed for by the plaintiff will be refused.

All the Justices concurring.